NO. 12-03-00242-CV



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


THE STATE OF TEXAS FOR THE
§
 APPEAL FROM THE 



BEST INTEREST AND PROTECTION
§
 COUNTY COURT AT LAW



OF Y.A-Y.
§
 CHEROKEE COUNTY, TEXAS

 

MEMORANDUM OPINION


 Appellant Y.A-Y. appeals from an order of commitment for temporary inpatient mental
health services. After a hearing without a jury, the trial court ordered Y.A-Y. committed to Rusk
State Hospital for a period not to exceed ninety days. In one issue, Y.A-Y. asserts the evidence
is legally and factually insufficient to support the order. We affirm.


Background 

 On July 8, 2003, an application for court-ordered temporary mental health services was
filed requesting the court commit Y.A-Y. to Rusk State Hospital for a period not to exceed ninety
days. The application was supported by a certificate of medical examination for mental illness,
prepared by a physician, Dr. Srinivasan, who had examined Y.A-Y. on July 8. Dr. Srinivisan
diagnosed Y.A-Y. as suffering from Psychosis NOS. The doctor indicated that Y.A-Y. is
mentally ill, is likely to cause serious harm to himself, and is suffering severe and abnormal
mental, emotional or physical distress, is experiencing substantial mental or physical deterioration
of his ability to function independently, and is unable to make a rational and informed decision
as to whether to submit to treatment. He based this opinion on Y.A-Y.'s behavior. Y.A-Y. was
mute, confused, and stared at people. 

 On July 9, 2003, Y.A-Y. was examined by Dr. Shakil Siddiqui who then also prepared
a certificate of medical examination for mental illness. Dr. Siddiqui diagnosed Y.A-Y. as
suffering from "major depression with psychosis." He found that Y.A-Y. is mentally ill and is
likely to cause serious harm to himself. On July 9, 2003, Y.A-Y. said that he had stopped taking
his medication, he is under a lot of stress, and he had lost ten pounds. He was feeling depressed
and tired. On July 8, 2003, Y.A-Y. was mute, confused, and stared at people. For all of those
reasons, Dr. Siddiqui found that Y.A-Y. presents a substantial risk of serious harm to himself or
others if not immediately restrained, which was demonstrated by his behavior and by evidence
of severe emotional distress and deterioration in his mental condition to the extent that he cannot
remain at liberty.

 Dr. Siddiqui testified at the hearing. He examined Y.A-Y. on July 9. He stated that Y.A-Y. suffers from major depression with psychosis and is likely to cause serious harm to himself. 
Dr. Siddiqui explained that Y.A-Y.'s depression led him to stop talking to anyone. He did not
want to live any more so he stopped eating and drinking for at least four to five days, which
resulted in a ten-pound weight loss. He was withdrawn from the community and was responding
to internal stimuli. He was not taking his medications, was stressed due to his responsibilities at
school, and wanted to die. Y.A-Y. told Dr. Siddiqui that he was feeling hopeless and worthless
and he wanted to go to sleep and never wake up. Dr. Siddiqui explained that if Y.A-Y. had
continued without food or water he would have continued to lose weight and his body functions
might have shut down because of dehydration. The doctor's diagnosis is based on his personal
examination of Y.A-Y., an examination of the medical records and history, and on reasonable
medical probability. Dr. Siddiqui testified that Rusk State Hospital is the least restrictive
available option for Y.A-Y. at the time.

 On cross-examination, Dr. Siddiqui explained that Y.A-Y. has been eating and drinking
since being admitted to the hospital and his condition is improving. The doctor believes Y.A-Y.
intended to harm himself by not eating or drinking and would deteriorate upon release. Y.A-Y.
is still self-conversing and still mute. He takes his medications only with prompting. He feeds
himself and maintains his personal hygiene only with prompting. He can initiate conversation
and respond to questions when he wants to. The doctor estimated Y.A-Y. should be hospitalized
for two to three weeks. However, Y.A-Y. had been hospitalized for one week at the time of the
hearing and still "looked pretty bad." He was still talking to himself, confused, and mute. 

 Y.A-Y. took the witness stand in his own behalf. He said a two- to three-week stay in the
hospital is too long because he is in school. When asked what school, he responded that the
doctor got their conversation "mixed up" when he came to the hospital. He explained that he was
not eating the way he usually did. He was on a meal plan with two meals a day. He lost ten
pounds because he was working out, but he never started deteriorating. He dresses himself every
morning. He does not speak because he does not know these people. He stated that he thought
the doctor's testimony was accurate, but he made it seem a lot more severe than it is. He
explained that he missed finals and he intends to attend the second semester of summer school. 
He is a senior at Stephen F. Austin State University, majoring in kinesiology with a general
business minor. He stated, "I don't see a problem with me." He said that, before he came to the
hospital, he had stopped seeing his doctor because the doctor told him that if he took his medicine
he did not have to continue seeing him. He said he does take his medicine and he does not wish
to hurt himself. He explained that he works out a lot and he does not refuse to speak; he just gets
quiet sometimes.

 The trial court found that Y.A-Y. is mentally ill and is likely to cause serious harm to
himself. The trial court entered an order reflecting these findings and ordering Y.A-Y. committed
to Rusk State Hospital for inpatient care for a period not to exceed ninety days.


Sufficiency of the Evidence

 In his sole issue, Y.A-Y. asserts the evidence is neither legally nor factually sufficient to
support the order of commitment. He complains that Dr. Siddiqui's testimony explaining why
he thought Y.A-Y. is likely to cause serious harm to himself does not provide the necessary
factual bases upon which his opinion is grounded. He contends that this evidence does not show
an overt act or continuing pattern of behavior tending to confirm that Y.A-Y. is likely to cause
serious harm to himself. Thus, he argues, the State failed to meet its evidentiary burden under
the statute. 

 In a legal sufficiency review where the burden of proof is clear and convincing evidence,
the reviewing court must consider all of the evidence in the light most favorable to the finding
to determine whether a reasonable trier of fact could have formed a firm belief or conviction that
its finding was true. In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). The reviewing court must
assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder
could do so. Id. A court should disregard all evidence that a reasonable factfinder could have
disbelieved or found to have been incredible. Id. 

 In addressing a factual sufficiency of the evidence challenge, this court must give due
consideration to evidence that the factfinder could reasonably have found to be clear and
convincing. In re C.H., 89 S.W.3d 17, 25 (Tex. 2002). We must determine whether the evidence
is such that a factfinder could reasonably form a firm belief or conviction about the truth of the
State's allegations. Id. "If, in light of the entire record, the disputed evidence that a reasonable
factfinder could not have credited in favor of the finding is so significant that a factfinder could
not reasonably have formed a firm belief or conviction, then the evidence is factually
insufficient." In re J.F.C., 96 S.W.3d at 267.

 The trial judge may order a proposed patient to receive court-ordered temporary inpatient
mental health services if the judge or jury finds, from clear and convincing evidence, that the
proposed patient is mentally ill and, as a result of the mental illness he is likely to cause serious
harm to himself, is likely to cause serious harm to others, or is (i) suffering severe and abnormal
mental, emotional, or physical distress, (ii) experiencing substantial mental or physical
deterioration of his ability to function independently, which is exhibited by his inability, except
for reasons of indigence, to provide for his basic needs, including food, clothing, health, or safety,
and (iii) unable to make a rational and informed decision as to whether or not to submit to
treatment. Tex. Health & Safety Code Ann. § 574.034(a) (Vernon 2003). To be clear and
convincing under this statute, the evidence must include expert testimony and, unless waived,
evidence of a recent overt act or a continuing pattern of behavior that tends to confirm either the
likelihood of serious harm to the proposed patient or others, or the proposed patient's distress and
the deterioration of his ability to function. Tex. Health & Safety Code Ann. § 574.034(d)
(Vernon 2003). 

 The State provided expert testimony explaining that Y.A-Y. is mentally ill and describing
his behavior and some specific acts. On the day he arrived at the hospital, Y.A-Y. was mute,
confused, and merely stared at people. On the following day, he told Dr. Siddiqui that he had
stopped taking his medication and was depressed. The depression caused him to stop talking and
withdraw from the community. Moreover, Y.A-Y. was so depressed he no longer wanted to live. 
The essence of the testimony is that he attempted to take his own life by starving himself to death. 
Even if the attempt is not successful, failing to eat for days at a time is likely to cause serious
harm including the loss of body functions. This is expert testimony of an overt act that tends to
confirm the likelihood of serious harm to Y.A-Y.

 Considering all the evidence in the light most favorable to the findings, we conclude a
reasonable trier of fact could have formed a firm belief or conviction that these findings were true. 
See In re J.F.C., 96 S.W.3d at 266. This evidence satisfies the statutory requirement for clear
and convincing evidence in support of the order for temporary inpatient mental health services. 
See Tex. Health & Safety Code Ann. § 574.034(d). The evidence is legally sufficient to
support the trial court's order. See In re J.F.C., 96 S.W.3d at 266.

 In addressing Y.A-Y.'s factual sufficiency complaint, we consider the evidence the
factfinder could reasonably have found to be clear and convincing. In re C.H., 89 S.W.3d at 25. 
There is some evidence that Y.A-Y. had a place to live and was still interested in attending
college. The evidence shows Y.A-Y. can feed himself and take care of his personal hygiene
without assistance but requires prompting to do so. He can initiate conversation and respond to
conversation when he wants to. He admitted that Dr. Siddiqui's testimony was accurate, but
denied having a problem. He also said he does take his medicine and denied wanting to hurt
himself. In light of the entire record, the evidence that the trial court could not have credited in
favor of its findings is not so significant that it could not reasonably form a firm belief or
conviction that Y.A-Y. is mentally ill and is likely to cause serious harm to himself. See id. 
Thus, the evidence is factually sufficient to support the trial court's findings. Because we hold
the evidence is both legally and factually sufficient to support the trial court's order, we overrule
Y.A-Y.'s sole issue.


Conclusion

 The evidence is legally and factually sufficient to support the trial court's order of
commitment for temporary inpatient mental health services. 

 We affirm the trial court's order of commitment for temporary inpatient mental health
services.


 SAM GRIFFITH 

 Justice


Opinion delivered January 8, 2004.

Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.




















(PUBLISH)